COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2025AP445**

Cir. Ct. No. 2024JC20

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE INTEREST OF L.D.H., A PERSON UNDER THE AGE OF 18:

ROCK COUNTY HUMAN SERVICES DEPARTMENT,

PETITIONER-CO-APPELLANT,

V.

S. P. AND GUARDIAN AD LITEM, JENNIFER L. NASH ELLIOTT,

RESPONDENTS,

R. M. S.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Rock County: MICHAEL A. HAAKENSON, Judge. *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   The Rock County Human Services Department (the County) and R.M.S. appeal a circuit court order that dismissed R.M.S. as a party from this CHIPS case.[1]  The court dismissed R.M.S. on the ground that, even though he has been married to the mother of the child at all pertinent times, he is not a "parent" of the child under the definition of "parent" that applies in CHIPS cases. *See* WIS. STAT. § 48.02(13) (defining "parent" for purposes of chapter 48 proceedings).  In briefing adopted by R.M.S., the County argues that R.M.S. is a "parent" of the child under § 48.02(13), primarily because that provision must be construed in light of the presumption of paternity in WIS. STAT. § 891.41, under which R.M.S. is defined to be "the natural father" of the child.

¶2      We conclude that discussion of WIS. STAT. § 48.02(13) by our supreme court in ***State v. James P.***, 2005 WI 80, 281 Wis. 2d 685, 698 N.W.2d 95, supports the circuit court's interpretation and application of WIS. STAT. § 48.02(13) to the facts here.  This is because our supreme court has rejected the only potential interpretation of § 48.02(13) under which R.M.S. could be deemed a "parent" for purposes of CHIPS proceedings.  Accordingly, we affirm.

## BACKGROUND

¶3      This CHIPS case involves one child, L.D.H., who was born in January 2024.  It is undisputed that at all pertinent times—when the child was conceived, at

---

[1] CHIPS is the common acronym used for "child in need of protection or services," as addressed in the Wisconsin Children's Code, WIS. STAT. ch. 48 (2023-24). ***Marinette County v. Tammy C.***, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

the time of birth, and throughout the CHIPS proceedings—the mother, S.P., and R.M.S. were married.

¶4    In June 2024, the County filed the CHIPS petition that initiated this case, seeking court intervention on behalf of the child. The petition alleged that the child was in need of protection and services based on the grounds identified in WIS. STAT. § 48.13(10) and (10m), provisions that we quote and refer to in the course of our discussion below. The petition identified the mother as one parent, but it did not identify R.M.S. as the other parent. Instead, it identified B.H. as the child's "alleged father," based on the mother's statements to a social worker about who the biological father might be.

¶5    The petition alleged that the mother's alcohol use rendered her "unable to make safe decisions for the Child or prior[i]tize the Child's basic needs." The petition also alleged that B.H. was absent from the child's life and that, in any case, he was not able to provide for the basic needs of the child. The County took temporary physical custody of the child.

¶6    After the petition was filed, R.M.S. was identified as having been married to the mother at all pertinent times, including when the child was born. R.M.S. was served with a notice of the CHIPS case in July 2024, and an attorney was appointed to represent him in the case.

¶7    Genetic testing was ordered, and B.H. and R.M.S. were both excluded as the child's biological father.[2]  No party has questioned the authenticity or accuracy of either genetic test for purposes of this appeal.

_____

[2] B.H. is not a party to this appeal, and no one argues that his rights were violated in this CHIPS proceeding.

¶8    During a permanency plan hearing in December 2024, a social worker for the County gave unrebutted testimony that the social worker had asked the mother to identify anyone who might be the father, other than B.H. or R.M.S., and that the mother had not identified anyone else.

¶9    After the parties received the result of the genetic test excluding R.M.S. as the biological father, the circuit court made an initial observation at a hearing in December 2024 that it would likely be appropriate for the court to dismiss R.M.S. from the case. But, after hearing objections, the court requested briefing on the issue.

¶10    The guardian ad litem (GAL) for the child argued that R.M.S. should be dismissed from the CHIPS proceeding because he is not "a parent," based on the definition of "parent" in WIS. STAT. § 48.02(13).[3] The GAL also alleged that the mother and R.M.S. "are not in a relationship" and "don't reside together," and that R.M.S. "has only recently had minimal contact with this child." The GAL had no objection to R.M.S. acting as an informal "family support, as other family members might be; but beyond that, I think we need to look to establish paternity for the child, and that we need to proceed in that fashion."

---

[3] WISCONSIN STAT. § 48.02(13) states in pertinent part:

> "Parent" means a biological parent, a husband who has consented to the artificial insemination of his wife under [WIS. STAT.] 891.40, or a parent by adoption. If the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under [WIS. STAT. §] 767.803, "parent" includes a person conclusively determined from genetic test results to be the father under [WIS. STAT. §] 767.804 or a person acknowledged under [WIS. STAT. §] 767.805 or a substantially similar law of another state or adjudicated to be the biological father.

4

¶11 In contrast, in written briefing and oral argument, the County contended that R.M.S. should remain in the case as a "parent" of the child for purposes of the CHIPS proceeding under the definition of "parent" in WIS. STAT. § 48.02(13). The County contended that this is because § 48.02(13) must be construed in light of the presumption of paternity raised by R.M.S.'s marriage to the mother under WIS. STAT. § 891.41.[4] The County also noted that no other man had been identified as the father and that B.H. had been excluded as the biological father by genetic testing. Attorneys for both R.M.S. and the mother agreed that R.M.S. should not be dismissed from the case, citing the same reasons.

¶12 At a hearing in January 2025, the circuit court recognized that R.M.S. is presumed to be the "natural father" of the child under WIS. STAT. § 891.41. But

---

[4] WISCONSIN STAT. § 891.41 states in its entirety:

(1) A man is presumed to be the natural father of a child if any of the following applies:

(a) He and the child's natural mother are or have been married to each other and the child is conceived or born after marriage and before the granting of a decree of legal separation, annulment or divorce between the parties.

(b) He and the child's natural mother were married to each other after the child was born but he and the child's natural mother had a relationship with one another during the period of time within which the child was conceived and no other man has been adjudicated to be the father or presumed to be the father of the child under par. (a).

(2) In a legal action or proceeding, a presumption under sub. (1) is rebutted by results of a genetic test, as defined in [WIS. STAT. §] 767.001 (1m), that show that a man other than the man presumed to be the father under sub. (1) is not excluded as the father of the child and that the statistical probability of the man's parentage is 99.0 percent or higher, even if the man presumed to be the father under sub. (1) is unavailable to submit to genetic tests, as defined in [§] 767.001 (1m).

the court also concluded that discussion by our supreme court in *James P.* interpreting WIS. STAT. § 48.02(13) establishes that R.M.S. is not a "parent" under that provision. Following the framing of the issues by the parties about the consequence if R.M.S. is not a "parent" under § 48.02(13), the court dismissed R.M.S. from the case.

¶13    After the circuit court made further rulings that are not challenged on appeal, the court entered a dispositional order in February 2025, determining that the child was in need of protection or services, and identifying her placement as being with relatives. This order identified the mother by name and stated that the father was "unknown." It described R.M.S. as the child's "legal father," and indicated that he "remains involved in [the child's] life."[5]

¶14    The County and R.M.S. appeal the decision to dismiss R.M.S. from the CHIPS proceeding, and the GAL has filed an appellate brief. For ease of discussion, we refer to the County's arguments on appeal, but in doing so we recognize that all of these arguments are adopted by R.M.S.

## DISCUSSION

¶15    No relevant facts are disputed on appeal. The County's sole argument is that, based on these facts, the circuit court erroneously interpreted the phrase "biological parent" in WIS. STAT. § 48.02(13) to exclude R.M.S. because he is not a "biological parent," and therefore not a "parent," in this context. The County's

---

[5] As part of the County's summary of the background on appeal, it calls our attention to court records establishing the existence of a child support action involving the same child, commenced in February 2025 in Rock County Circuit Court by the county child support agency, and naming the mother and R.M.S. as respondents. But the County does not develop a relevant argument in this appeal based on the existence of, or based on any aspect of, that separate action, and we do not refer to it further.

argument rests on the premise that, because the presumption that R.M.S. is the child's "natural father" under the terms of WIS. STAT. § 891.41 has not been rebutted, therefore he is a "parent," because he is "a biological parent," as that phrase is used in § 48.02(13). We conclude that there is no basis for this interpretation of § 48.02(13) when we take into account pertinent discussion by our supreme court in *James P.* as we are required to do. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (our supreme court is the only court in Wisconsin primarily tasked with "law defining" and the "only state court with the power to overrule, modify[,] or withdraw language" contained in a previous opinion of that court).

¶16  We pause to note that on appeal, the County does not suggest that, even if the circuit court correctly interpreted the phrase "biological parent" in WIS. STAT. § 48.02(13) to determine that R.M.S. is not a "parent" in the CHIPS proceeding, the court should not have dismissed him from the case. We do not address in this opinion ways in which R.M.S. should or could have been given notice or participated in the CHIPS case at various stages—based on the information that was available to pertinent actors at each stage—apart from our ruling that, based on the facts established as of the time when the circuit court made its challenged ruling, R.M.S. could not participate in the case as a "parent" of the child under § 48.02(13). For example, we do not address provisions in WIS. STAT. § 48.27 that address circuit court notices to interested parties and rights to be heard.

¶17  Statutory interpretation presents issues of law that we review de novo. *Sojenhomer LLC v. Village of Egg Harbor*, 2024 WI 25, ¶11, 412 Wis. 2d 244, 7 N.W.3d 455. "'When interpreting statutes, we start with the text, and if its meaning is plain on its face, we stop there.'" *Id.* (quoted source omitted). "We also consider the broader statutory context, interpreting language consistently with how it is used

in closely related statutes." ***Id.*** "In doing so, we 'generally give words their common, everyday meaning, but we give legal terms of art their accepted legal meaning.'" ***Id.*** (quoted sources omitted).

¶18 We begin with points that the County does not dispute. Under the two provisions relied on by the County as the basis for this CHIPS action, the conduct at issue was that of "the child's parent, guardian[,] or legal custodian." More specifically, a circuit court "has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered," pursuant to WIS. STAT. § 48.13, if:

- *"[t]he child's parent, guardian[,] or legal custodian* neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child," pursuant to WIS. STAT. § 48.13(10) (emphasis added); or

- *"[t]he child's parent, guardian[,] or legal custodian* is at substantial risk of neglecting, refusing or being unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to endanger seriously the physical health of the child, based on reliable and credible information that the child's parent, guardian[,] or legal custodian has neglected, refused or been unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to endanger seriously the physical health of another child in the home," pursuant to WIS. STAT. § 48.13(10m) (emphasis added).

¶19 Given these asserted grounds for the CHIPS proceedings, the County acknowledges that the issue in this appeal is whether R.M.S. could be categorized as "the child's parent," as that phrase is used in WIS. STAT. § 48.13(10) and (10m), given the definition of "parent" in WIS. STAT. § 48.02(13). In particular, the issue here is whether R.M.S. is "a biological parent," because no one argues that R.M.S. has ever been a "guardian" of the child, as defined in § 48.02(8), or a "legal

custodian" of the child, as defined in § 48.02(11).[6] For example, counsel for the mother acknowledged to the circuit court that R.M.S. was never a source of financial support to the child pursuant to any court order.

¶20 Turning now to points of potential dispute, no party directs us to a specific definition of "biological parent" in chapter 48 or in any closely related statute. But our supreme court in **James P.** discussed at length the meaning of this phrase as used in WIS. STAT. § 48.02(13), which we now summarize.

¶21 James P. was proven by genetic testing to be the biological father of a child whose mother was not married to anyone at the time of the child's conception or birth, or at any pertinent subsequent time. **James P.**, 281 Wis. 2d 685, ¶¶1-3, 32. James P.'s rights to the child were terminated by a circuit court on the grounds of abandonment under WIS. STAT. § 48.415(1)(a)3., based on periods during which James P., as a "parent," had no contact with the child.[7] **James P.**, 281 Wis. 2d 685, ¶¶1-2. James P. argued that termination was improper because, during the periods when he admitted to having no contact with the child, he did not know that he was the child's biological father. **Id.**, ¶¶2, 7-8. He took the position that he learned this fact only later, when he was adjudicated the father based on genetic testing

---

[6] WISCONSIN STAT. § 48.02(8) states in its entirety, "'Guardian' means the person named by the court having the duty and authority of guardianship."

WISCONSIN STAT. § 48.02(11) states in its entirety, "'Legal custodian' means a person, other than a parent or guardian, or an agency to whom legal custody of the child has been transferred by a court, but does not include a person who has only physical custody of the child."

[7] One method of showing abandonment is through proof that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child[,] and the parent has failed to visit or communicate with the child for a period of 6 months or longer." WIS. STAT. § 48.415(1)(a)3. James P. did not challenge on appeal a finding by the circuit court that he failed to show—as a "good cause" affirmative defense to abandonment—that he was not aware of his legal obligations toward the child. *See* **State v. James P.**, 2005 WI 80, ¶¶15, 46-47, 281 Wis. 2d 685, 698 N.W.2d 95; § 48.415(1)(c).

conducted as part of the CHIPS proceeding. *Id.*, ¶8. Therefore, James P. contended, during the periods of alleged abandonment, he could not be considered to have been the child's "parent" under the definition in WIS. STAT. § 48.02(13). *James P.*, 281 Wis. 2d 685, ¶¶2, 11. In other words, James P. sought a ruling that he was not a "parent" of the nonmarital child under § 48.02(13) during the period in which he had no contact, because that period predated the genetic testing that proved him to be the biological father, and therefore his parental rights could not be terminated based on allegations of abandonment prior to adjudication.

¶22 Our supreme court ruled that James P. satisfied the definition of "parent" in WIS. STAT. § 48.02(13), because he "is in fact," and "and always was," "the biological father of a nonmarital child," and therefore he "may have his parental rights terminated based on periods of abandonment that occurred prior to his official adjudication as the child's biological father." *Id.*, ¶¶15, 45, 48. "[A]n unmarried individual, like James P., who fathers a nonmarital child, qualifies as a 'parent' under the first sentence" of § 48.02(13) "as a 'biological parent'" for purposes of chapter 48 proceedings, regardless whether "biological parenthood" is at any time "'recognized, found, or adjudicated.'" *Id.*, ¶¶32, 34 (quoted source omitted).

¶23 In the course of reaching this decision, the court interpreted the two sentences of WIS. STAT. § 48.02(13) in the following ways.

¶24 To repeat, the first sentence states in pertinent part: "'Parent' means a biological parent, a husband who has consented to the artificial insemination of his wife ..., or a parent by adoption." WIS. STAT. § 48.02(13). The court explained that this first sentence provides "a general definition of 'parent' that applies to married and unmarried individuals." *James P.*, 281 Wis. 2d 685, ¶¶31, 37. The "general definition" aspect is signaled in part through the use of the word "means," in contrast

to the word "includes" that appears in the second sentence. *Id.*, ¶¶25, 31. Regarding the immateriality of marital status, this can be seen in part from the fact that "[o]n its face, the first sentence is not limited to children born of legal marriages." *Id.*, ¶23; *see also id.*, ¶29 (rejecting argument that the first sentence "applies only to married individuals").

¶25    To repeat, the second sentence states in pertinent part: "If the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry ..., 'parent' includes … a person acknowledged ... or adjudicated to be the biological father." WIS. STAT. § 48.02(13). The court in *James P.* explained that this second sentence "merely provides additional circumstances," beyond those stated in the first sentence, under which an individual could qualify as a "'parent' of 'a nonmarital child who is not adopted or whose parents do not subsequently intermarry.'" *James P.*, 281 Wis. 2d 685, ¶¶31, 37 (quoting § 48.02(13)).

¶26    Of note here, the court rejected James P.'s argument that the second sentence would be "superfluous" unless, as James P. contended, the first sentence applies exclusively to married individuals and the second sentence applies exclusively to unmarried individuals. *Id.*, ¶¶11-13, 33-37. This is so, James P. argued, because otherwise, the two sentences would be redundant since the "biological parent" in the first sentence will always be "a person … adjudicated to be the biological father" in the second sentence. *Id.*, ¶33.

¶27    In response to this argument, the court reasoned that distinguishing between potential parents based on their marital status is not necessary to give the two sentences in WIS. STAT. § 48.02(13) different meanings. *James P.*, 281 Wis. 2d 685, ¶¶33-37, 42. The court explained that the sentences are distinguished by the difference between parenthood that is actual (*de facto*), as addressed in the first

sentence, and parenthood that is legally determined (*de jure*), as addressed in the second sentence. *Id.*, ¶¶35-36. That is, a "biological parent" means "the actual biological father"—the *de facto* status—regardless of any litigation event. *Id.*, ¶¶34-35, 42 ("[A]n individual who is, in fact, the biological father of a child has always been the child's biological parent."). In contrast, "an adjudication of biological fatherhood is a legal determination"—the *de jure* status—which can occur through the default of a party in litigation.[8] *Id.*, ¶¶34-35. Thus, the "biological parent," as referred to in the first sentence, "will always be capable of being 'adjudicated to be the biological father'" (because genetic testing offered in court can prove the fact of biological parenthood), but "an individual who is 'adjudicated to be the biological father'" (such as through default in a paternity proceeding) is not necessarily "a biological parent." *See id.*, ¶35 (quoting § 48.02(13)).

¶28 Applying the discussion of WIS. STAT. § 48.02(13) in *James P.* to the issue in this appeal leaves no room for an interpretation under which R.M.S. qualifies as "a biological parent" by virtue of his marriage to the mother under the first sentence of § 48.02(13), which is the sentence at issue in this appeal.

---

[8] The court in *James P.* was not expansive in its references to adjudication through default in litigation. *James P.*, 281 Wis. 2d 685, ¶¶34, 36. But the court seems to have been referring to the potential for a circuit court to enter a default judgment adjudicating a man to be the father of a child in a paternity proceeding, even in the absence of genetic testing. Under the statutes addressing paternity actions, after a petition to establish paternity has been filed, and an alleged father of a child has been properly served with notice of the proceedings and the possibility of a default judgment against him, and then he fails to appear for court proceedings, he may be adjudicated the child's father. *See* WIS. STAT. § 767.813 (including language on model forms stating, "If you do not appear, the court will enter a default judgment finding you to be the father," or "If you fail to appear at any stage of the proceeding, including a scheduled court-ordered genetic test, the court may enter a default judgment finding the man claimed to be the father as the father."). The court in *James P.* equated the phrase "biological father" from the second sentence of WIS. STAT. § 48.02(13) to such an adjudicated-father-by-default, on the premise that the judgment resulting from default renders the man to be the child's father for all legal purposes. *See James P.*, 281 Wis. 2d 685, ¶35.

¶29     Regarding this first sentence, R.M.S. has been proven not to be a *de facto* biological parent, as that concept is explained in ***James P.*** His marital status is irrelevant to whether he is a "biological parent" under the first sentence. Under the reasoning in ***James P.***, when interpreting the first sentence, the fact that the second sentence begins with the phrase, "If the child is a nonmarital child," does not mean that the first sentence addresses only children who are "marital." *See* ***James P.***, 281 Wis. 2d 685, ¶¶23-24. Instead, while that phrase in the second sentence limits application of the second sentence to nonmartial children, "it does not, on its face, state that it is the *exclusive* means by which an individual may qualify as the 'parent' of a nonmarital child." *See id.*, ¶¶20-24 (emphasis in original). Instead, the second sentence provides "additional means by which an individual may qualify as the 'parent' of 'a nonmarital child who is not adopted or whose parents do not subsequently intermarry.'" *See id.*, ¶¶24, 37 ("Clearly, [the second sentence] applies *only if* the child in question is a nonmarital child." (emphasis in original)).

¶30     Given the narrow issue raised on appeal involving the meaning of "biological parent" in the first sentence of WIS. STAT. § 48.02(13), we need not further discuss the second sentence.

¶31     Turning to the definition of "natural father" and the presumption of paternity in WIS. STAT. § 891.41, there is no dispute that R.M.S. is "presumed to be the natural father" of the child. This is because he and the mother were "married to each other and the child [was] conceived [and] born after" they were married—without any evidence that the mother and R.M.S. were legally separated or obtained an annulment or divorce. Further, this presumption was not "rebutted by results of a genetic test … that show that a man other than" R.M.S. "is not excluded as the

father of the child" and that the statistical probability "is 99.0 percent or higher" that the other man is a parent. *See* § 891.41(1), (2).

¶32     One problem with the County's reliance on this definition of "natural father" is that, to the extent that its application here would conflict with the application of the definition of "biological parent" in WIS. STAT. § 48.02(13), we must follow the rule of statutory interpretation that "'the more specific statute controls.'" *See Waity v. LeMahieu*, 2022 WI 6, ¶38, 400 Wis. 2d 356, 969 N.W.2d 263 (quoted source omitted).  There is no reasonable argument that § 48.02(13) is not a more specific definition for purposes of CHIPS proceedings than is the general presumption found in WIS. STAT. § 891.41.  As for the existence of a conflict in the two phrases, it is true that we attempt to construe statutes when they appear, at least at first blush, to be in conflict, to see if there is any reasonable way to reconcile them to resolve a given dispute.  *See Waity*, 400 Wis. 2d 356, ¶38.  But here we can see no way to reconcile the provisions for application in this case, given the discussion we have summarized from *James P.*  The County correctly notes that the facts in *James P.* and the facts here are quite different, and also that our supreme court's bottom-line determination—that the timing of the adjudication of biological father status did not prevent a finding that James P. abandoned the child—does not address the issue here.  But the County does not persuade us that the court's discussion of § 48.02(13) does not resolve the narrow issue here against the County.

¶33     The County lists statutes, in addition to WIS. STAT. § 891.41, that use the phrase "natural father," including some statutes that do not require genetic testing to establish that status.  *See, e.g.*, WIS. STAT. § 891.405 (establishing presumption of "natural father" status based on an acknowledgement of paternity filed under WIS. STAT. § 69.15(3)(b)1. or 3., when "no other man is presumed to be the father under [§] 891.41(1)").  The County submits that this establishes that "the

legislature does not define parenthood by biology alone." But we already knew this from the terms of WIS. STAT. § 48.02(13) and the discussion in *James P.*, as we have summarized above. And this general point does not shed light on the specific meaning of "biological parent" in § 48.02(13).

¶34 Circling back to the County's point that the legislature intended "biological parent" in WIS. STAT. § 48.02(13) to mean the same thing as "natural parent" in WIS. STAT. § 891.41, the County contends that this is supported by apt dictionary definitions, which the County argues are definitions that comport with widely accepted language usages. Likely, many people (and dictionaries) would equate "biological" and "natural" in the parentage context. But that does not solve the interpretation issue here, given the specific language in § 48.02(13), together with the interpretation of that language in *James P.* Based on those sources, we cannot conclude that "biological parent" under § 48.02(13) is the same as "natural father" under § 891.41.

¶35 Indeed, the use of different terms, surrounded by detailed related conditions or statuses, suggests that the meanings are not identical. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2019 WI 24, ¶29, 385 Wis. 2d 748, 924 N.W.2d 153 (stating that when the legislature uses different statutory terms, particularly within the same section, courts presume the terms to have different meanings). It is true that these phrases appear not only in different statutory sections, but also in different chapters, and for that reason we do not place great weight on the use of different terms alone. Still, the evident intent of WIS. STAT. § 48.02(13) is to provide precise definitions of "parent" in the CHIPS context, which might differ from other statutory definitions, and we reject the County's argument that we should assume identical meanings.

15

¶36 The County calls our attention to the extensive list of legislative purposes for WIS. STAT. ch. 48, which are described over the course of many subparts in WIS. STAT. § 48.01(1). Specifically, the County highlights the numerous references to the goal of achieving the best interests of children. Given the primacy of the best-interest standard for chapter 48 proceedings, the County suggests, the legislature could not have intended to preclude from these proceedings someone who would be deemed a "natural father" under WIS. STAT. § 891.41, because this would always, or perhaps at least sometimes, not be in the best interests of children. Given how narrowly the parties have defined the issue in this appeal, this is, at best, a policy argument that would have to be directed to the legislature. Put differently, the County does not support an argument that the line drawn by the legislature in WIS. STAT. § 48.02(13), when applied in this case, so obviously runs counter to the best interests of the child that the result is absurd, *see **Sorenson v. Batchelder***, 2016 WI 34, ¶11, 368 Wis. 2d 140, 885 N.W.2d 362 (courts attempt to avoid statutory interpretations that produce absurd results), or that the result is directly contrary to any legislative purpose stated in § 48.01(1).[9]

## CONCLUSION

¶37 For all of these reasons, we affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] The County also briefly alludes to the fundamental liberty interest that parents have, under the Due Process Clause, to the care, custody, and control of their children, *see **Troxel v. Granville***, 530 U.S. 57, 65 (2000), but the County fails to develop any argument based on that concept, and we do not address any constitutional issue.